UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVANSTON INSURANCE COMPANY,

       Plaintiff,

v.                     Case No. 8:24-cv-2715-VMC-CPT

PROPLOGIX, LLC,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Evanston Insurance Company's Motion to Dismiss Defendant's Counter-Claims (Doc. # 37), filed on February 13, 2025, and Defendant Proplogix, LLC's Motion to Dismiss Or, in the Alternative, Stay This Action for Declaratory Relief Pursuant to Abstention Doctrine (Doc. # 40), filed on February 24, 2025. Proplogix responded to Evanston's Motion to Dismiss on March 6, 2025. (Doc. # 43). Evanston replied on March 28, 2025. (Doc. # 48). Evanston responded to Proplogix's Motion to Dismiss on March 17, 2025. (Doc. # 46). For the reasons that follow, Evanston's Motion is granted in part and denied in part, and Proplogix's Motion is denied.

I.    **Background**

Evanston initiated this lawsuit against Proplogix on November 21, 2024. (Doc. # 1). The complaint alleges a single count for declaratory relief, seeking a declaratory judgment that Evanston did not owe a duty to defend or indemnify Proplogix for an underlying lawsuit. (Id. at 12). Proplogix answered on January 6, 2025, and alleged three counterclaims: a claim for a declaratory judgment that Evanston owed Proplogix a duty to defend and indemnify it in the underlying lawsuit (Count One); a claim for estoppel or promissory estoppel (Count Two); and a claim for negligence or bad faith (Count Three). (Doc. # 20).

The dispute stems from an underlying lawsuit and a professional liability insurance policy that Evanston had issued to Proplogix. Evanston had issued the policy to Proplogix for the period from September 10, 2022, to September 10, 2023. (Doc. # 1-2). The policy included the provision that Evanston "shall pay on behalf of the Insured all sums in excess of the Deductible stated in the Declarations that the Insured becomes legally obligated to pay as Damages and Claim Expenses incurred as a result of a Claim first made against the Insured." (Id. at 17). This provision applied to claims for a "wrongful act; or personal injury [] in the performance

2

of Professional Services rendered or that should have been rendered by the Insured." (Id.). The policy defined "claim" as the "Insured's receipt of: A written demand for Damages or remedial Professional Services, including a written demand that the Insured toll or waive a statute of limitations; or [t]he service of suit or institution of arbitration proceedings against the Insured; however, Claim shall not include any Disciplinary Proceeding." (Id. at 21). The policy defined wrongful act as "a negligent act, error, or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors, or omissions the Insured is legally responsible, and includes an Interrelated Wrongful Act." (Id. at 24).

The policy also included noteworthy exclusions exempting Evanston from its duty to defend or indemnify Proplogix for specific claims. It exempted claims for "Illegal Profit" that were "[b]ased upon, arising out of, or in any way involving the gaining by any Insured of any profit, remuneration, or advantage to which such Insured was not legally entitled." (Id. at 25). The policy also exempted claims for "Trade Practices and Antitrust" that were "[b]ased upon or arising out of any actual or alleged violation of any law, whether statutory, regulatory, or common law, respecting any of the

3

following activities: antitrust, business competition, unfair trade practices, or tortious interference in another's business or contractual relationships." (Id. at 27).

On November 21, 2022, the underlying lawsuit was filed against Proplogix in the United States District Court for the District of Kansas, captioned Uhlig LLC d/b/a Condocerts and Welcomelink v. PropLogix, LLC, Case No. 2:22-cv-02475-KHV-ADM. (Doc. # 1 at 1, 3). Uhlig filed an amended complaint in the lawsuit on December 13, 2022. (Id. at 3). On December 20, 2022, Proplogix sent to Evanston a copy of the amended complaint, along with a cease-and-desist letter received from Uhlig. (Id. at 4). On December 27, 2022, Evanston acknowledged receipt of the documents in a letter, which added the following proviso: "This letter does not address the availability, if any, of insurance coverage or benefits under the above-referenced policy or any other policy. Nothing in this letter shall be construed as a waiver of any of the rights or defenses that Evanston Insurance Company may have under the policy, nor as an admission of any liability whatsoever of Evanston Insurance Company." (Doc. # 1-3 at 2).

Evanston initially agreed to provide a defense to Proplogix in the underlying lawsuit. (Doc. # 1 at 4). Along with its counterclaim, Proplogix submitted the e-mail from

Evanston in which it agreed to defend Proplogix. In that e-mail, Evanston noted that Proplogix had already obtained counsel from two law firms, but that "neither firm is on our approved list of panel counsel. Accordingly, Evanston will retain panel counsel to handle this matter going forward." (Doc. # 20-3 at 2). Evanston obtained Jay Morris and Jordon Stanley, attorneys at Gordon Rees Scully Mansukhani, LLP, to represent Proplogix in the underlying lawsuit. (Doc. # 20 at 32).

The second amended complaint in the underlying lawsuit contains the following relevant facts. "Uhlig provides Community Information as the authorized representative of its clients, including Common Interest Communities and/or property management companies which serve as managing agents for Common Interest Communities." (Doc. # 1-4 at 3). "Uhlig provides the Community Information to retail customers under contractual terms and conditions set forth in Uhlig's website, registration, and ordering agreements and expressly accepted as a condition of doing business with Uhlig." (Id. at 5). The Terms of Use, the Account Registration Agreement, and the Order Submission Agreement all "prohibit[], inter alia, all customers from reselling Community Information for commercial purposes." (Id. at 6).

5

"PropLogix is a customer of Uhlig and has placed repeated orders through online sites operated by Uhlig." (Id.). "PropLogix's services . . . allow PropLogix customers seeking Community Information to query PropLogix's database to determine if the community address in question is one for which PropLogix maintains information." (Id. at 6-7). "If the address is not a PropLogix-supported property but is a Uhlig-supported community, PropLogix orders the Community Information from Uhlig and resells the information to PropLogix's customer." (Id. at 7). Based on these facts, Uhlig asserted claims for breach of contract, unjust enrichment, fraud, tortious interference with business relationships, and deceptive and unfair competition under Florida law. (Id. at 10-16).

As alleged in the counterclaim, the firm Gordon Rees, now representing Proplogix in the lawsuit after having been selected by Evanston, filed an answer on behalf of Proplogix in the underlying lawsuit on February 13, 2023. (Doc. # 20 at 33). Uhlig subsequently served Proplogix with interrogatories and requests for production, but the Gordon Rees attorneys failed to serve responses or objections to these interrogatories and requests within 30 days. (Id.). This led Uhlig to file a motion to compel on July 17, 2023, leading

6

the court to order a hearing in which a representative of Proplogix would be required to appear. (Id.). In response to this order, the Gordon Rees attorneys filed a motion to reconsider the order setting the hearing. (Id. at 34). The court denied the motion. (Id.). Despite this denial, the Gordon Rees attorneys did not inform Proplogix about the hearing so that Proplogix failed to appear at the hearing. (Id.). The court issued an order for Proplogix to show cause on July 25, 2023, as to why sanctions should not be entered. (Id.). Proplogix claims it only learned about this show cause order because it conducted a Pacer search. (Id. at 35).

On August 16, 2023, Evanston sent Proplogix a letter, explaining that it was denying coverage and citing the exclusions for Illegal Profit and Trade Practices and Antitrust as its justification. (Doc. # 1-5). Proplogix then requested that the Gordon Rees firm withdraw from its representation and retained new counsel. (Doc. # 20 at 36). Proplogix eventually settled with Uhlig on what it claims were "dis-advantaged terms using its own corporate funds." (Id. at 37).

On November 21, 2024, Evanston initiated the present lawsuit against Proplogix. (Doc. # 1). A month later, on December 23, 2024, Proplogix initiated a lawsuit against Mr.

7

Morris and Mr. Stanley of Gordon Rees in the Circuit Court for the City of St. Louis, Missouri ("State Court Action"), which asserted one claim for legal malpractice. (Doc. # 46-1). On February 13, 2025, Proplogix amended its complaint in the State Court Action to add Evanston as a defendant, alleging claims against Evanston for a declaratory judgment and negligence/bad faith. (Doc. # 40). Therefore, Proplogix's operative complaint in the State Court Action largely parallels its counterclaims in this action, except that it adds a claim for legal malpractice against Mr. Morris and Mr. Stanley. (Id. at 12-15).

Evanston filed its Motion to Dismiss Defendant's Counter-Claims on February 13, 2025. (Doc. # 37). Proplogix responded to Evanston's Motion to Dismiss on March 6, 2025. (Doc. # 43), and Evanston replied on March 28, 2025. (Doc. # 48). Proplogix filed its Motion to Dismiss Or, in the Alternative, Stay This Action for Declaratory Relief Pursuant to Abstention Doctrine on February 24, 2025. (Doc. # 40). Evanston responded to Proplogix's Motion to Dismiss on March 17, 2025. (Doc. # 46). Both Motions are ripe for review.

## II.  **Legal Standards**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint or

counterclaim and construes them in the light most favorable
to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d
1250, 1262 (11th Cir. 2004). Further, the Court favors the
plaintiff or counterclaim-plaintiff with all reasonable
inferences from the allegations in the complaint or
counterclaim. Stephens v. Dep't of Health & Human Servs., 901
F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint [or counterclaim] attacked by
> a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's
> obligation to provide the grounds of his
> entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the
> elements of a cause of action will not do. Factual
> allegations must be enough to raise a right to
> relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
citations omitted). Courts are not "bound to accept as true
a legal conclusion couched as a factual allegation." Papasan
v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its
consideration to well-pleaded factual allegations, documents
central to or referenced in the complaint or counterclaim,
and matters judicially noticed. La Grasta v. First Union Sec.,
Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Both parties pursue claims under the Declaratory
Judgment Act, 28 U.S.C. § 2201. (Doc. # 1 at 12; Doc. # 20 at
37). The Declaratory Judgment Act provides, in relevant part:

9

> In a case of actual controversy within its
> jurisdiction . . . any court of the United States,
> upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any
> interested party seeking such declaration, whether
> or not further relief is or could be sought. Any
> such declaration shall have the force and effect of
> a final judgment or decree and shall be reviewable
> as such.

28 U.S.C. § 2201(a).

Under the Declaratory Judgment Act, federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Id. at 286-87. The Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).

To determine whether to exercise its discretion under the Act, the Court follows the guidance from Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1941), that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." The

10

Eleventh Circuit has provided a list of factors to guide the decision whether to exercise jurisdiction over a declaratory judgment case when there is a concurrent state proceeding:

1. the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

2. whether the judgment in the federal declaratory action would settle the controversy;

3. whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

4. whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

5. whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

6. whether there is an alternative remedy that is better or more effective;

7. whether the underlying factual issues are important to an informed resolution of the case;

8. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

9. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas, 411 F.3d at 1331. These factors are applied under a totality-of-the-circumstances standard, and not all of the

factors are required. The Eleventh Circuit has clarified further that these factors are intended to "encompass" the Court's determination of the similarity between the concurrent proceedings. <u>Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.</u>, 12 F.4th 1278, 1286 (11th Cir. 2021).

## III. <u>Analysis</u>

### A. <u>Proplogix's Motion to Dismiss</u>

Proplogix argues that this lawsuit should be dismissed, or alternatively stayed, pursuant to the <u>Brillhart</u> abstention doctrine. (Doc. # 40). Per Proplogix, abstention is necessary because the State Court Action is better suited to adjudicate the interests at issue in this lawsuit. (<u>Id.</u>). The Court disagrees. While the Court acknowledges that the two cases contain some similarities, the Court concludes that the cases are not similar enough to warrant abstention.

As an initial matter, Florida law applies to this case. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." <u>McGow v. McCurry</u>, 412 F.3d 1207, 1217 (11th Cir. 2005). "With regard to insurance contracts, Florida follows the 'lex loci contractus' choice-of-law rule, which 'provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties

12

in determining an issue of insurance coverage.'" Rando v. Gov't Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009) (quoting State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla.2006)), certified question answered, 39 So. 3d 244 (Fla. 2010). The insurance policy was issued to Proplogix at its address in Sarasota, Florida, contains a Florida Policyholder Notice, and contains Florida-specific endorsements. (Doc. # 1-2 at 4, 8, 12). Therefore, Florida insurance law applies. See Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am., 992 F. Supp. 2d 1259, 1263 (S.D. Fla. 2014) (finding insurance contract was executed in Florida when the policyholder had its principal place of business in Florida), aff'd, 845 F.3d 1099 (11th Cir. 2017).

Looking to the first Ameritas factor, the Court finds that the state of Missouri has little interest in deciding the issues of Florida state law raised in this action. 411 F.3d at 1331. In contrast, this Court frequently applies Florida state law pursuant to diversity and supplemental jurisdiction, such that this Court is better suited to adjudicate the issues in this case.

For similar reasons, the Court determines that the fifth Ameritas factor - whether a declaratory judgment would increase friction between federal and state courts - weighs

against abstention. Id. As the case focuses on Florida state law and does not invoke Missouri state law, a declaratory judgment in this case would not increase friction between the federal and state courts. See Nat'l Tr., 12 F.4th at 1289 (explaining that this factor focuses on whether the federal action would be resolving novel or unresolved issues of state law); Allstate Ins. Co. v. Auto Glass Am., LLC, 418 F. Supp. 3d 1009, 1029 (M.D. Fla. 2019) ("This factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." (internal quotations and citations omitted)).

The fourth factor – whether the federal action is being used for procedural fencing – also weighs against abstention. Ameritas, 411 F.3d at 1331. This case was filed before the State Court Action. Proplogix waited three weeks after receiving service in this case to initiate the State Court Action. (Doc. ## 18, 46-1). Notably, Proplogix did not include Evanston in that suit originally, nor did it raise any claims related to the insurance policy at issue. (Doc. # 46-1). Proplogix waited for two months to pass, and then amended its complaint in the State Court Action to add Evanston as a defendant. (Doc. # 40-2). As this case was brought before the State Court Action and well before Evanston was added as a

defendant in that action, the Court concludes that this case was not brought to establish procedural fencing.

The Court finds that the seventh, eighth, and ninth factors are inapplicable to this case. Ameritas, 411 F.3d at 1331. The underlying lawsuit was filed in federal court in Kansas and the insurance policy is a Florida policy. Thus, the Missouri state court is not in a better position to evaluate those issues. Relatedly, there is not a close nexus between the underlying facts and Missouri state law, nor does federal common law or statutory law dictate a resolution of this action.

The Court determines that the second Ameritas factor – whether a potential declaratory judgment would settle the controversy in the State Court Action – is neutral to the Court's analysis. Ameritas, 411 F.3d at 1331. The State Court Action extends beyond the issues in this case. It includes similar claims to this case in terms of alleging that Evanston is legally required to defend and indemnify Proplogix and is also liable for negligence/bad faith. (Doc. # 40-2). However, the State Court Action contains two additional parties not in this case, Mr. Morris and Mr. Stanley, and asserts a legal malpractice claim against those parties. (Id. at 12-15).

15

A declaratory judgment in this case would settle the duty-to-defend claim in the State Court Action. However, any declaratory judgment in this case could not fully settle the controversy in the State Court Action because it will have no impact on the legal malpractice claim. See Brillhart, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). Accordingly, the second Ameritas factor provides equal fodder for both parties' arguments because a declaratory judgment would settle some, but not all, of the issues in the State Court Action.

The Court also finds that the third factor – whether a declaratory judgment in this case would serve a useful purpose – is neutral. Ameritas, 411 F.3d at 1331. Evanston is a defendant in the State Court Action, and the interpretation of the insurance policy is also at issue in the State Court Action. Thus, both cases could clarify the legal relations between the parties. See The Travelers Home & Marine Ins. Co. v. Calhoun, No. 5:13-cv-251-ACC-PRL, 2013 WL 12148861, at *6 (M.D. Fla. Oct. 25, 2013) ("[T]his declaratory action would clarify the relation between Travelers and Defendant . . . .

16

[T]he state court action would also clarify the legal relations at issue in this case. Thus, this factor is neutral.").

Looking at the totality of the circumstances, the Court finds that all of the applicable Ameritas factors either weigh against abstention or are neutral or inapplicable. See Nat'l Tr., 12 F.4th at 1289 (directing courts to utilize a totality of the circumstances standard in applying the Ameritas factors). The Court notes that there is some overlap between the cases in terms of the claims and parties involved. But the State Court Action also has a claim and two parties that are not in this case. Furthermore, the Court is better suited to adjudicate the Florida insurance issues in this case. Finally, the Court finds it significant that this case was filed over two months before Proplogix added Evanston as a defendant in the State Court Action. Given this sequence of events, the Court concludes that this action is not brought in reaction to the State Court Action or for forum shopping. See Mobley v. Manahugh, No. 8:07-cv-1833-VMC-EAJ, 2009 WL 10714877, at *3 (M.D. Fla. Feb. 26, 2009) (looking at the chronology of the cases to determine if the federal action is "anything other than forum shopping and 'reactive litigation'"). Accordingly, the Court declines to abstain

17

from exercising jurisdiction over this case and denies Proplogix's Motion to dismiss.

## B. Evanston's Motion to Dismiss

Evanston argues that all three Counts of Proplogix's counterclaim should be dismissed. (Doc. # 37). The Court evaluates Evanston's argument for each Count in turn.

### i.    Count One

Evanston argues that Count One should be dismissed as a declaratory judgment claim that is "duplicative" of its own declaratory judgment claim. (Id. at 14). The Court agrees.

"Under the federal Declaratory Judgment Act, a court maintains broad discretion over whether or not to exercise jurisdiction over claims." Knights Armament Co. v. Optical Sys. Tech., Inc., 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008). "When deciding whether to dismiss a counterclaim on the basis that it is redundant, courts consider whether the declaratory judgment serves a useful purpose. To determine whether the declaratory judgment serves a useful purpose, courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011); see also Sembler Fam. P'ship No. 41,

Ltd. v. Brinker Fla., Inc., No. 8:08-cv-1212-SCB-MAP, 2008 WL 5341175, at *2 (M.D. Fla. Dec. 19, 2008) (declining to exercise jurisdiction over counterclaim seeking declaratory judgment because it "mirror[ed] Plaintiff's damages claim" such that it was "redundant and unnecessary"). "[W]hen presented with a redundant counterclaim for declaratory judgment, a court may either strike or dismiss the filing." Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co., No. 9:19-cv-80111-BB, 2019 WL 7899220, at *2 (S.D. Fla. Apr. 10, 2019).

Here, there is significant overlap between the two declaratory judgment claims. Evanston seeks a declaratory judgment that it had no duty to defend or indemnify Proplogix for the underlying lawsuit in Kansas. (Doc. # 1 at 13). Conversely, Proplogix seeks a declaratory judgment that Evanston had a duty to both defend and indemnify Proplogix for the underlying lawsuit. (Doc. # 25 at 40-41). Proplogix claims that its requested declaratory judgment goes further by requesting "amounts expended and not reimbursed in attorneys' fees" for the underlying lawsuit. (Id. at 41). But Proplogix's request for a declaration that it is entitled to be reimbursed for attorneys' fees which it already expended is an inappropriate basis for a declaratory judgment.

"The purpose of declaratory relief is to clarify the legal relations between parties to a dispute. The court, in effect, declares the parties' legal rights and responsibilities, so that they may conform their future conduct to the law and minimize the risk of future injury." New Mkt. Realty 1L LLC v. Great Lakes Ins. SE, 341 F.R.D. 322, 326 (M.D. Fla. 2022). Proplogix's request asks the Court to look backwards and find that Evanston breached the policy by failing to bear these attorneys' fees originally. However, "the purpose of the Declaratory Judgment Act is to clarify the legal relations at issue and to settle controversies *prior* to a legal breach of duty or contract." Eisenberg v. Standard Ins. Co., No. 9:09-cv-80199-KAM, 2009 WL 1809994, at *3 (S.D. Fla. June 25, 2009) (emphasis in original). Therefore, a declaratory judgment claim is an improper vehicle for Proplogix to seek attorneys' fees. See Id. ("Plaintiff's declaratory relief claim asks the Court to make factual determinations regarding possible breaches of contract that Standard is alleged to have committed. However, questions regarding whether a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act."); ARSC, Inc. v. Covington Specialty Ins. Co., No. 0:17-cv-61605-RNS, 2017 WL 10742774 (S.D. Fla. Dec. 20,

20

2017) ("Here, Emerald Center's petition for a declaratory judgment serves no useful purpose because it involves only past conduct which has already ripened into a breach-of-contract claim: there is no future uncertainty to resolve.").

Once Proplogix's request for a declaratory judgment that it is owed attorneys' fees is disregarded, the claim becomes substantively identical to Evanston's declaratory judgment claim. The issues presented by the counterclaim are the same – whether Evanston has a duty to defend and indemnify Proplogix for the underlying lawsuit. Both claims focus on the enforceability of the same provisions of the insurance policy – the duty to defend and the duty to indemnify. The eventual resolution of Evanston's declaratory judgment claim will necessarily resolve the issue raised by Proplogix's declaratory judgment claim. See Ctr. Hill, 2019 WL 7899220, at *3 ("The Court finds that Defendant's Counterclaim is wholly redundant. Resolution of Plaintiff's claim and Defendant's affirmative defenses will decide the factual and substantive issues presented by Defendant's Counterclaim."). Accordingly, the Court concludes that Proplogix's declaratory judgment claim in Count One serves "no useful purpose," such that it should be dismissed. Medmarc, 783 F. Supp. at 1217.

The Court grants Evanston's Motion in so far as it seeks the dismissal of Count One.

### ii. **Count Two**

Evanston claims that Count Two, for estoppel or promissory estoppel, should be dismissed for a failure to state a claim under Florida law. (Doc. # 37 at 16-20). The Court is unpersuaded.

"The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 661 (Fla. 1987). However, there is "an exception to the rule which provides that when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." Doe on Behalf of Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995) (internal quotation omitted). "[P]romissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Crown Life, 517 So. 2d at 662.

"The essential elements of estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." Gotham Ins. Co. v. W. Coast Fire Prot. Corp., 752 F. App'x 793, 798 (11th Cir. 2018) (citing Tome v. State Farm Fire & Cas. Co., 125 So. 3d 864, 867 (Fla. 4th DCA 2013)). "Promissory estoppel will apply only if the insured can show prejudice because '[i]t is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy.'" Id. at 798-99 (quoting Doe, 653 So. 2d at 374).

The Court finds that Proplogix has sufficiently pled a claim for equitable estoppel. Proplogix alleges that on January 18, 2023, "Evanston represented to Proplogix . . . that it would provide Proplogix with a defense in the Underlying Lawsuit but would not allow the counsel Proplogix selected to defend it in the Underlying Lawsuit . . . . Evanston further informed Proplogix that it would retain panel counsel to handle the defense of the Underlying Lawsuit." (Doc. # 20 at 31). To support this allegation, Proplogix submitted the communication from Evanston, in which

Evanston's representative stated plainly that "Evanston will provide a defense to the Insured in this matter." (Doc. # 20-3 at 3). Months later, on August 16, 2023, Evanston sent Proplogix a letter reversing course. It informed Proplogix that it was denying coverage and would not defend them in the underlying lawsuit. (Id. at 35; Doc. # 1-5).

Therefore, Proplogix has alleged that Evanston made a material representation to Proplogix – that it would defend Proplogix in the underlying lawsuit - which Evanston then repudiated. See Gotham Ins., 752 F. App'x at 798 (listing the first factor for promissory estoppel as whether "a representation as to a material fact that is contrary to a later-asserted position"); Tome, 125 So. 3d at 867 ("Regarding the representation element, courts have required that the promise be definite, and when the promise is entirely indefinite as to terms and time, this is insufficient to support an estoppel claim." (internal quotations omitted)).

Proplogix also reasonably relied upon Evanston's representation that it would defend Proplogix in the underlying lawsuit. See W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989) ("The promisor is affected only by reliance which he does or should foresee."). Evanston informed Proplogix on January 18, 2023, that it would

24

"provide a defense to [Proplogix] in this matter." (Doc. # 20-4 at 3). This was in response to Proplogix reporting the claim to Evanston and inquiring whether Evanston would provide it with a defense in the underlying lawsuit. (Doc. # 20 at 30-31). Thus, Proplogix reasonably relied upon Evanston's representation that it would provide a defense because it was in direct response to Proplogix's request to do just that.

Accepting Proplogix's allegations as true, its reliance upon Evanston's representation was to its detriment. See Gotham Ins., 752 F. App'x at 798 (listing the third and final factor as whether there is "a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon"). Proplogix was represented by other counsel before Evanston communicated that it would provide a defense. (Doc. # 20 at 31). Evanston then mandated that Proplogix switch its counsel to a firm that was on Evanston's list of approved panel counsel. (Id.). As such, Evanston arranged for the firm Gordon Rees to undertake the representation going forward. (Id.; Doc. # 20-4 at 1-2). Proplogix alleges that Gordon Rees made a series of careless errors, which disadvantaged Proplogix's position in the underlying lawsuit. (Doc. # 20 at 42-43).

Thus, Proplogix was placed in a worse position as a direct result of its reliance upon Evanston's representation that it would provide a defense. See Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1339 (S.D. Fla. 2006) ("Florida law recognizes that the detrimental reliance element can be supported by evidence that the insurer's representation induced the insured to take action that he would not have taken but for the representation." (citing Homrich v. American Chambers Life Ins. Co., 594 So. 2d 348, 350 (Fla. 5th DCA 1992)). Therefore, it is plausible that Proplogix detrimentally relied upon Evanston's material representations.

Proplogix has also sufficiently alleged prejudice as a result of Evanston's actions. See Gotham Ins., 752 F. App'x at 798-99 (requiring the insured to establish "prejudice" to maintain a claim for promissory estoppel). Proplogix directly alleges that it sustained "prejudice," again citing in support the myriad errors committed by Gordon Rees, which was only its counsel in the case because of Evanston's actions. (Doc. # 20 at 41-43). For purposes of a motion to dismiss, the Court finds that Proplogix's claim of prejudice is sufficiently detailed. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above

26

the speculative level."); <u>Cigarette Racing Team, Inc. v.
Parliament Ins. Co.</u>, 395 So. 2d 1238, 1240 (Fla. 4th DCA 1981)
(finding that, in case in which the insured was claiming
promissory estoppel against the insurer, "since an allegation
of prejudice generally requires a factual determination, we
believe the trial court erred in granting summary judgment to
[the insurer]").

Having met all three elements for a promissory estoppel
claim under Florida law, and having established prejudice as
well, the Court finds that Proplogix has sufficiently pled a
claim for promissory estoppel under Florida law. <u>Gotham Ins.</u>,
752 F. App'x at 798-99.

In an attempt to refute this conclusion, Evanston argues
that Proplogix's pleadings are mere "threadbare recitals of
the elements of a cause of action" and clings to the high
standard of proof for promissory estoppel required under
Florida law. (Doc. # 48 at 4). True, "[c]overage by promissory
estoppel is an extraordinary remedy that must be proven
through clear and convincing evidence." <u>Horn v. Liberty Ins.
Underwriters, Inc.</u>, 391 F. Supp. 3d 1157, 1166 (S.D. Fla.
2019) (internal quotations omitted), <u>aff'd</u>, 998 F.3d 1289
(11th Cir. 2021). However, the standard of proof that
Proplogix would be required to meet at trial is not the

standard that it must meet to survive a motion to dismiss. See Great American Assur. Co. v. Sanchuk, LLC, No. 8:10-cv-2568-VMC-AEP, 2012 WL 195526, at *6 (M.D. Fla. January 23, 2012) (allowing a promissory estoppel claim to survive a motion to dismiss based solely on the insured's allegations without analyzing the veracity of those allegations). For purposes of a motion to dismiss, the Court only needs to analyze whether Proplogix's factual allegations extend "above the speculative level." Twombly, 550 U.S. at 555. As explained above, the Court finds that Proplogix has done so.

Accordingly, the Court finds that Count Two properly states a claim for promissory estoppel and denies Evanston's Motion in so far as it seeks the dismissal of Count Two.

### iii. **Count Three**

In Count Three, Proplogix asserts a claim for negligence and bad faith. (Doc. # 20 at 44-47). Evanston argues that the Count should be dismissed in part for failure to state a claim. (Doc. # 37 at 20-24). The Court agrees with Evanston.

Count Three sets forth two different means by which Evanston allegedly acted negligently or in bad faith. (Doc. # 20 at 44-47). First, Evanston allegedly breached its duties by retaining the law firm Gordon Rees, failing to monitor Gordon Rees, failing to obtain status reports from Gordon

Rees, and then by declining to provide coverage and terminating its defense of Proplogix after seven months had passed. (Id. at 44-45). Second, Proplogix asserts that Gordon Rees committed a litany of negligent acts, and that Gordon Rees's negligence can be attributed to Evanston. (Id. at 45-47).

Evanston's Motion focuses exclusively on the second theory of liability, arguing that it "cannot be held vicariously liable for [Gordon Rees]'s alleged negligence," such that Count Three "should be dismissed for failure to state a claim." (Doc. # 37 at 24). Thus, the Court will only determine if the portion of Count Three that focuses on Evanston's alleged vicarious liability warrants the dismissal of Count Three.

The Court must first determine whether Florida or Kansas law applies. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." McGow, 412 F.3d at 1217. For interpreting insurance policies, Florida generally "follows the 'lex loci contractus' choice-of-law rule." Rando, 556 F.3d at 1176. However, "matters concerning performance [of insurance contracts] are determined by the law of the place of performance under traditional conflict of laws

29

principles." <u>Gov't Emps. Ins. Co. v. Grounds</u>, 332 So. 2d 13, 14-15 (Fla. 1976); <u>see also</u> <u>Gallina v. Com. & Indus. Ins.</u>, No. 8:06-cv-1529-JDW-EAJ, 2008 WL 4491543, at *6 (M.D. Fla. Sept. 30, 2008) (regarding a dispute between an insurer and insured, the court found that "the choice of law rule that governs is not the law of *lex loci contractus,* but rather, the law of place of performance"), <u>aff'd</u>, 375 F. App'x 935 (11th Cir. 2010). Count Three is based upon Evanston's alleged bad faith and negligence in its performance of its obligations of the insurance contract in the litigation taking place in Kansas. (Doc. # 20 at 44-47). As such, the law of the place of performance, which is Kansas, must apply. <u>Grounds</u>, 332 So. 2d at 14-15.

The parties dispute whether insurers can be held vicariously liable for the acts of legal counsel retained by insurers on behalf of the insureds. The crux of the parties' dispute is the extent to which <u>Pacific Empires Ins. Co. v. P.B. Hoidale Co.,</u> 804 F. Supp. 137, 141 (D. Kan. 1992) remains good law. In <u>Pacific</u>, the insurer had obtained legal counsel to represent the insured, and the court found that the evidence established that the attorney "conferred primarily" with the insurer. <u>Id.</u> Accordingly, the court found that the lawyer "was engaged in the furtherance of [the insurer's]

business to such a degree that [the insurer] had the 'right to direct and control' [the lawyer's] activities." Id. (quoting Brinkley v. Farmers Elevator Mut. Ins. Co., 485 F.2d 1283, 1286 (10th Cir. 1973)). As such, the court found that the insurer could be held vicariously liable for the malpractice of counsel. Id. at 142. The parties agree on these principles from Pacific.

However, the parties disagree on whether other holdings in Pacific remain good law. Pacific also found that "[e]ven assuming, however, that [the insurer] was not liable for [the lawyer]'s acts under the rule set forth in Brinkley, a separate theory of agency dictates imputing [the lawyer]'s conduct to [the insurer]." Id. The court held that the insurer can be held "liable for its attorney's negligence in fulfilling the insurance company's contractual duty to defend it in good faith and with due care." Id. Evanston argues that this aspect of Pacific is no longer good law based upon more recent Kansas law. The Court agrees.

"The general rule in Kansas is that merely hiring an attorney to represent an insured will not make the insurer vicariously liable for the attorney's negligence." Progressive Nw. Ins. Co. v. Gant, No. 2:15-cv-9267-JAR, 2018 WL 3472796, at *23 (D. Kan. July 19, 2018). "Kansas also

recognizes, however, that . . . an attorney hired by an insurer to represent an insured can be considered an agent of the insured, making the insurer vicariously liable for the attorney's actions — if, at the time in question, the attorney's acts or omissions were directed, commanded, or knowingly authorized by the insurer." Id. (citing Hackman v. W. Agr. Ins. Co., No. 104786, 2012 WL 1524060, at *16 (Kan. Ct. App. 2012)).

Hackman discusses Pacific's holding and confirms that insurers can only be held vicariously liable "if, at the time in question, the attorney's acts or omissions were directed, commanded, or knowingly authorized by the insurer." 2012 WL 1524060, at *16; see also Progressive Nw. Ins. Co. v. Gant, 957 F.3d 1144, 1155 (10th Cir. 2020) ("[Hackman] did not read [Pacific] as imposing vicarious liability on an insurer for the negligence of the attorney selected to defend the insured but instead limited vicarious liability to those actions of the attorney in which the insurer was directly involved."). The Hackman court explained further that "[w]hen there are facts to demonstrate that the attorney violated these rules and allowed the insurer to direct or control the attorney's actions in defending the insured, the attorney likely will be considered the agent of the insured and, in turn, the insurer

may be held vicariously liable for the attorney's negligent conduct." 2012 WL 1524060, at *16. Based on the facts of the case, the court found that the lack of facts demonstrating that the insurer "provided direction" or "exerted control" over the attorney dictated that the insurer could not be held vicariously liable. Id. at *17.

Therefore, the Court determines that establishing the insurer's direction, control, and authorization over the attorney is the linchpin inquiry to establish vicarious liability. Id. at *16. In so far as Pacific stands for the proposition that the insurer is liable simply because it hired the attorney, the Court concludes that this cannot be squared with more recent Kansas law. 804 F. Supp. at 142. Accordingly, Proplogix must establish that Evanston exercised direction and control over Gordon Rees for Gordon Rees's alleged negligence to be attributed to Evanston.

As currently pled, Proplogix has failed to make this requisite showing. Proplogix specifically asserts that "[t]he acts and omissions of Gordon Rees, Morris and Stanley are attributable to Evanston under [Pacific] as Evanston selected Gordon Rees, Morris and Stanley to perform its non-delegable duty to defend PropLogix." (Doc. # 20 at 46). This is exactly the holding from Pacific that the Court finds inapplicable.

33

Moreover, the specific factual allegations regarding the negligent misdeeds of Gordon Rees do not discuss Evanston's role in these misdeeds. (Id. at 45-46). Proplogix lists twelve acts of alleged malpractice. (Id.). It claims that Gordon Rees committed each of these acts and does not allege that Evanston was involved whatsoever. (Id.). Accordingly, Proplogix has failed to adequately state a claim for vicarious liability under Kansas law. See Hackman, 2012 WL 1524060, at *17 (requiring the insured to demonstrate that the insurer "provided direction" or "exerted control" over the attorney to hold the insurer liable for the attorney's negligence or bad faith).

The Court dismisses Count Three for failure to state a claim and grants Evanston's Motion in so far as it seeks the dismissal of the portion of Count Three which alleges that Evanston is vicariously liable for Gordon Rees's actions. However, the Court will grant leave to Proplogix to amend Count Three.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Evanston Insurance Company's Motion to Dismiss Defendant's Counter-Claims (Doc. # 37) is **GRANTED** in part and **DENIED** in part.

34

(2) Proplogix, LLC's Motion to Dismiss Or, in the Alternative, Stay This Action for Declaratory Relief Pursuant to Abstention Doctrine (Doc. # 40) is **DENIED.**

(3) Count One of Proplogix's counterclaim is **DISMISSED** with prejudice.

(4) Count Three of Proplogix's counterclaim is **DISMISSED** with leave to amend.

(5) Proplogix may file its amended counterclaim within fourteen days of the date of this Order.

(6) Evanston's Request for Oral Argument (Doc. # 47) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of April, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE